## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.** 1100 13th Street, NW Suite 800 Washington, DC 20005 | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| **v.** | ) ) ) | |
| **U.S. DOGE SERVICE,** 736 Jackson Place, N.W. Washington, D.C. 20503 | ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the refusal of the U.S. DOGE Service ("USDS") to process an expedited FOIA request POGO filed with USDS for email communications, text messages, and messages sent on messaging platforms sent or received by specified DOGE employees and containing specified terms and its refusal to provide POGO with all non-exempt documents

2. This case seeks declaratory relief that USDS is in violation of the FOIA, 5 U.S.C. § 552(a)(6)(E)(i), by failing to process POGO's expedited request for records and for injunctive relief ordering USDS to process and release to POGO immediately the requested records.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

5.      Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and other sources and verify the information through investigations using the FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under the FOIA for this investigation.

6.      The U.S. DOGE Service, which is a creation of executive order and exercises substantial independent authority, is a federal agency within the meaning of the FOIA, 5 U.S.C. §

552(f), and has possession, custody, and control of the records POGO seeks in this action.

## STATUTORY BACKGROUND

7.    The FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

8.    The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

9.    For non-expedited requests an agency must make a determination on a FOIA request within 20 business days and notify the requester of which of the requested records it will release, which it will withhold, and why, and the requester's right to appeal the determination to the agency head. 5 U. S.C. § 552(a)(6)(A)(i).

10.    The FOIA also requires agencies to promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* at § 552(a)(6)(E)(v)(II).

11.    Agencies are required to make a determination on a request for expedition within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). DOJ regulations mirror this requirement. 28 C.F.R. § 16.5(e)(4).

12.    Agency decisions to deny a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).

13.    For non-expedited requests, the 20-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

18.    If an agency does not make a determination on a non-expedited FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

## FACTUAL BACKGROUND

19.    Even prior to assuming office, President Donald J. Trump announced he was forming a Department of Government Efficiency "to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies." *CREW v. DOGE*, 2025 U.S. Dist. LEXIS 42869, *3 (cleaned up). He initially tapped Elon Musk and Vivek Ramaswamy to head DOGE.

20.    President Trump formalized that announcement on his first day in office with Executive Order 14158, entitled "Establishing and Implementing the President's 'Department of Government Efficiency.'" Hours after he issued the EO 14158, Ramaswamy bowed out leaving DOGE headed solely by Musk.

21.    Section one of EO 14158 states that its purpose is to "establish[] the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal

technology and software to maximize governmental efficiency and productivity." Section three

renames the United States Digital Service as the United States DOGE Service ("USDS")

"reorganized . . . with the Executive Office of the President ("EOP")." *CREW v. DOGE*, U.S.

Dist. LEXIS 42869, *5. Section 3(b) of EO 14158 further establishes a USDS Administrator

reporting to the White House Chief of Staff and establishes the U.S. DOGE Service Temporary

Organization, ("USDSTO") headed by the USDS Administrator and charged with "advancing the

President's 18-month DOGE agenda,"

22.     EO 14159 also directs each agency, in consultation with USDSTO, to establish a

DOGE team "within their respective Agencies" consisting of at least four employees, who may

include Special Government Employees. Agency heads are directed to coordinate the work of

their DOGE Team Lead with USDS. Section four directs the USDSTO Administrator to

"commence a Software Modernization initiative to improve the quality and efficiency of

government-wide software, network infrastructure, and information technology (IT) systems,"

working with agency heads. EO 14158, Sections 3(c) and 4(a).

23.     These provisions mirror what Musk and Ramaswamy had promised in a

November 20, 2024 opinion piece in the *Wall Street Journal*. Specifically, "they declared their

intent to 'advise DOGE at every step to pursue three major kinds of reform: regulatory

rescissions, administrative reductions, and cost savings.'" *CREW v. DOGE*, U.S. Dist. LEXIS

42869, *3 (citation omitted). The two further "revealed that, from its inception, a major objective

of the new department would be 'mass head-count reductions across the federal bureaucracy.'"

*Id.* at *4 (citation omitted).

24.     On February 11, 2025, Trump issued Executive Order 14210 that, in sections 1

and 3(b)(i), lays out DOGE's role in "eliminating waste, bloat, and insularity" and its mandate to

work with agency heads to create and implement hiring plans, including anointing DOGE with the power to decide which vacancies should be filled. For new hires, the Order directs agencies to consult with the DOGE Team Lead. Section 3(b)(ii) of the EO further directs agencies "not to fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." Section 3(f) of the EO obligates the Administrator to "submit a report to the President regarding implementation of this order, including a recommendation as to whether any of its provisions should be extended, modified, or terminated."

25.    On February 3, 2025, the White House confirmed publicly that Musk was officially joining the federal government as a special government employee and that he would submit a financial disclosure report that would not be made public. Theodore Schleifer & Eric Lipton, "Elon Musk's Financial Disclosure Will Not Be Made Public," *New York Times*, Feb. 11, 2025, https://www.nytimes.com/2025/02/11/us/politics/elon-musk-finances.html?smid=nytcore-ios-share&referringSource=article.Share. According to public reporting, Musk received both a government email address and an office. *See, e.g.*, Francesca Chambers, "Trump makes DOGE head Elon Musk a 'special government employee' amid accusations of a takeover, *USA Today*, Feb. 3, 2025, https://www.usatoday.com/story/news/politics/2025/02/03/doge-elon-musk-special-employee-federal-government/78185365007/. But the Administration has refused to acknowledge his precise role, at times denying he is in charge of DOGE despite President Trump's assertions to the contrary. *See* Andrea Shalal & Nandita Bose, "Trump appears to contradict White House, says Musk in charge of DOGE," *Reuters*, Feb. 20, 2025, https://www.reuters.com/world/us/trump-appearws-contradict-white-house-says-elon-musk-charge-doge-2025-02-20/.

26.    Exercising power conferred on it by the President, USDS is implementing a "broad[] agenda to gut the civilian workforce, assert power over the vast federal bureaucracy and shrink it to levels unseen in at 20 years." Jeff Stein, Elizabeth Dwoskin, Hannah Natanson & Jonathan O'Connell, "In chaotic blitz, Musk's core goals come into focus," *Washington Post*, Feb. 9, 2025, https://www.washingtonpost.com/business/2025/02/08/doge-musk-goals/.

27.    According to public reporting, DOGE through USDS is "exercising significant authority by directing agencies to implement various policies, superintending personnel decisions purporting to close federal agencies, acquiring access to sensitive databases, and threatening agency officials who fail to comply." "Challenging DOGE," *Governing for Impact*, Feb. 2025, https://governingforimpact.org/wp-content/uploads/2025/02/Challenging-DOGE-Primer-final.pdf.

28.    Hundreds of thousands of federal employees and government contractors across 27 federal agencies have lost their jobs because of USDS's actions. *See* Sara Dorn, "Trump's Great Rehiring: Over 26,000 Fired By DOGE Likely To Return – So Far," *Forbes*, Apr. 4, 2025, https://www.forbes.com/sites/saradorn/2025/04/04/trumps-great-rehiring-over-26000-fired-by-doge-likely-to-return-so-far/.

29.    With its actions USDS has demonstrated an almost unparalleled penchant for secrecy, seeking to shield its actions from judicial review and public accountability. Its titular head Elon Musk is "operating with a level of autonomy that almost no one can control." Jonathan Swan, Theodore Schleifer, Maggie Haberman, Kate Conger, Ryan Mac & Madeleine Ngo, "Inside Musk's Aggressive Incursion Into the Federal Government," *New York Times*, Feb. 4, 2025, https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html.

30.    At the same time, USDS has run roughshod over record keeping requirements

designed, in part, to bring greater transparency and accountability to the government. For example, according to a recently filed lawsuit against the Office of Personnel Management, *Jane Does 1-2 v. OPM*, Civil No. 25-00234 (D.D.C. Jan. 27, 2025), an Elon Musk employee working with DOGE set up a new server at OPM that bypassed federal law and was intended for sending government-wide emails. Billy Mitchell, "OPM calls to dismiss email server lawsuit, issues missing privacy assessment," *Fedscoop*, Feb. 5, 2025, https://fedscoop.com/opm-server-lawsuit-motion-to-dismiss-elon-musk-doge/.

31.    To implement its mission, USDS staff have gained access to a vast swath of sensitive government data and records. For example, USDS now has access and the ability to "delete, modify, or export the personal information of millions of federal workers and federal job applicants." Stein, et al., *Washington Post*, Feb. 9, 2025. DOGE is also seeking access to personal taxpayer data from the IRS that "includes detailed financial information about every taxpayer, business and nonprofit in the country[.]" Jacob Bogage & Jeff Stein, "Musk's DOGE seeks access to personal taxpayer data, raising alarm at IRS," *Washington Post*, Feb. 16, 2025, https://www.washingtonpost.com/business/2025/02/16/doge-irs-access-taxpayer-data/.

32.    To date, based on how USDS has functioned, several courts have concluded USDS is an agency subject to the FOIA. In *CREW v. DOGE*, U.S. Dist. LEXIS 42869, *34 the court relied significantly on EO 14158, which it noted "appears to give USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so." *Id.* From this the court concluded DOGE is an agency wielding substantial independent authority. The court also relied on "USDS's actions to date [that] demonstrate its substantial authority over vast swathes of the federal government." U.S. Dist. LEXIS 42869, *38. Those actions include: (1) decimating USAID, including placing nearly all of its employees on administrative leave (what Musk termed

"feeding USAID into the wood chipper"), *id.* at *37; (2) eliminating 104 DEI-related contracts with the federal government; and (3) terminating 89 contracts with the Department of Education. *Id.* at *38. As Judge Cooper noted, "[d]oing any of those three things would appear to require substantial independent authority; to do all three surely does." *Id.* at *39.

33.     Relying on comparable facts Judge Bates in *Am. Fed'n Of Lab. & Congr. Of Indus. Orgs. v. U.S. Dep't of Labor*, concluded that for purposes of the Economy Act USDS is an agency. No. 25-0339 (D.D.C. Feb. 14, 2025), ECF No. 34. Among other things, "USDS is coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, and spending." These activities "[are] not the stuff of mere advice and assistance." *Id.* at 7. In reaching this conclusion the Court compared the definition of agency in the Economy Act to similar definitions of agency in the FOIA and Administrative Procedure Act.

*Plaintiff's Expedited FOIA Request*

34.     On April 8, 2025, Plaintiff submitted via email a FOIA request to both U.S. DOGE Service and OMB seeking all email communications, text messages, and messages on messaging platforms from January 20, 2025 through the present sent or received by 34 designated individuals with doge.eop.gov email addresses and containing any of 17 listed key terms. *See* Exhibit A. Only the handling of POGO's request to USDS is challenged here.

35.     POGO requested expedited processing of its FOIA request given the significant public and press interest in DOGE, USDS, and USDSTO. As POGO explained, this press interest stems significantly from how Elon Musk's businesses are impacted by federal government operations and the efforts of Musk and DOGE inside the federal government. This raises risks of

conflicts of interest where Musk and DOGE could impact companies owned by Musk or associated with other DOGE staff.

36.    In justifying its request for expedition, POGO explained the urgency to inform the public about actual or alleged government activity. Specifically, Musk and DOGE have fed data from federal agencies into AI systems for analysis and looked for ways to replace federal workers with AI. At the same time, Musk owns xAI, and artificial intelligence company, and has promoted vehicles from his company, Tesla, while at a White House event. Further, Musk's SpaceX does business with the government, including the Defense Department and NASA, all while Musk is serving as a special government employee.

37.    POGO further explained that expedition is warranted because the requested records would shed light on a matter of widespread and exceptional media interest raising possible questions about the government's integrity that affect public confidence, specifically the potential for conflicts of interest regarding Musk and other DOGE employees.

38.    POGO requested a fee waiver because the subject of its request concern the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by POGO and the public in a significant way. POGO also requested that it be treated as a member of the news media and accordingly not be charged for search and review fees.

39.    By email dated April 14, 2025, USDS advised POGO that it was declining POGO's FOIA request because, according to USDS, it is subject to the Presidential Records Act and not subject to the FOIA. USDS provided no basis to administratively appeal that determination.

## PLAINTIFF'S CLAIM FOR RELIEF

### CLAIM ONE
### (Wrongful Withholding of Non-Exempt Records)

40.     Plaintiff repeats and re-alleges paragraphs 1-39.

41.     Plaintiff properly asked for agency records within the possession, custody and control of USDS.

42.     Defendant DOJ wrongfully withheld agency records requested by Plaintiff by refusing to process POGO's request and wrongfully withholding records responsive to that request.

43.     Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its April 8, 2025 FOIA request at no cost to Plaintiff.

### CLAIM TWO
### (Failure to Grant Expedition)

44.     Plaintiff repeats and re-alleges paragraphs 1-43.

45.     Plaintiff properly asked that USDS expedite the processing of Plaintiff's April 8, 2025 FOIA request, which seeks agency records in the possession, custody and control of USDS, based on its showing of the urgency to inform the public about an actual or alleged Federal Government activity and that the request is made by a member of the media.

46.     Defendant improperly refused to consider and grant Plaintiff's request for expedition.

47.     Plaintiff has exhausted all applicable administrative remedies with respect to defendant's denial of Plaintiff's request for expedition.

48. Plaintiff is therefore entitled to injunctive and declaratory relief with respect to the immediate and expedited processing and disclosure of the requested records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendant to immediately and fully process plaintiff's expedited April 8, 2025 FOIA request and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to the immediate processing and disclosure of the requested records at no cost to Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of the action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiff its costs and reasonable attorney's fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
Weismann.anne@gmail.com

Dated: April 28, 2025                    *Attorney for Plaintiff*